Good morning, Your Honors. Let me please the Court, Steve Krongold, for the appellant, Rego Cardenas, who is in court with me. Very good. Please proceed. I'd like to reserve five minutes for rebuttal. Keep your eye on the clock. We'll try to help remind you, but there's a trapdoor right behind that podium. Keep that in mind. I've spent a lot of time in preparing this oral argument, reading a lot of the Supreme Court cases, trying to ascertain what Garmin means, and unfortunately we're mired in a situation where it's a case-by-case situation. I want to take a step back for a minute and just tell you a little bit about what happened in the grievance procedure and what the district court did to this claim. The grievances arose because Mr. Cardenas was forced to drive his delivery truck over nine-and-a-half hours a day for three consecutive days in a week when he needed to leave early to comply with child visitation schedule. He didn't want to work overtime. What happened was he grieved the fact that they did not honor his opt-in, but in connection with that, that he was working 53 hours one week, week ending June 21 of 08, he worked 53 hours. On the week ending June 28, he worked 52 hours. I have a chart on page five of my opening brief. These were hours in excess of 40. The time cards supported his hours. Can we kind of cut to the chase here? Your client was accused of cheating, falsifying records. He admitted to that. So what the real issue is whether under state law you still have a claim. Garment, at least as I read it, only applies when state laws are dealt with, not federal claims. So at least from my perspective, if you proceed on that basis and address that issue, it would be very helpful. I would love to. Okay, please do. I think there was adequate information in the record that this idea of proven dishonesty is so vague that it could be used as a pretext to retaliate against somebody. I thought he confessed that. Am I wrong? I thought that when he was confronted, he admitted that he had falsified, I forget how many, 13 or something like that, and saying that the customer had asked for certain things, they contacted the customers, and none of them had done that. What he said was that he was trained that when it's late, a late error, he is to look at his dyad, and there's only certain selections he can make. He was told in his training manual that he was given that he could select customer requested late. And he called, that's an important thing, is he called the center and advised them that he was going to be late, and he asked for backup. Now, they did this investigation, and it's not dishonest, your honors, is to say I was wrong. I used the wrong code. That's what he admitted to. That's not what I understood your argument to be. I thought the argument here is whether your state law claim survives and whether it's meritorious. You're now arguing that your client never did anything wrong in the first place. There was no dishonesty here. Is that your argument? My argument is that there was no legitimate nondiscriminatory reason, number one. And number two is even if you believe that proven dishonesty was shown, that it was pretextual. Okay, so your argument is that this was a pretext, that they didn't really have any grounds to fire him even though he was dishonest. I don't believe it was dishonest, your honor. I believe he used the wrong code. He did not want to cheat. We're in the record, counsel. Is there anything that says that your client just used the wrong code and this was not an intentional cheating? I'd like to see that. Where is it? It's in the record at fact. This is undisputed fact. What's the record site, please? At the excerpt of record 57-1, fact 91. UPS provided Cardenas with a training document indicating that the code customer requested late could properly apply where the packages could not be delivered because there was no such person. The customer moved or the customer refused to accept delivery. A UPS employee even advised Cardenas that he could use customer requested late for reasons that he did on September 22nd and 23rd, 2009. That's fact. What you're reading, where is this coming from? His deposition testimony. His deposition testimony. Yes. But I thought in another part of the deposition, he indicated that he had checked this off because he wanted more time, basically, and said that the customers in each case had requested that. Isn't that correct? The customer requested late means that. He said that the customers themselves requested this. Not that he checked the wrong box, but that the customers requested it. Didn't he say that? No, he wasn't given any options on the die yet. No, I forget that. What did he say about what the customers told him? And I think it's 13. Didn't he say, didn't he testify that every one of these people told him what they wanted and that's why he checked the box? And then they called and all of them disclaimed that. Isn't that correct? No, that's not correct. Okay. So he was never confronted with the fact that what he said was refuted by the customers. He was confronted with that fact, but he never testified that all these customers requested that they be delivered late. He never testified to that. He testified that he was trained that that could be an acceptable code and that he understood now that it was wrong. And that's what he testified to. Let me get back to the question that Judge Smith asked you, but then you immediately went to the sort of the evidence supporting retaliation. Let me get back to the preemption. There's an argument that his state law claim, insofar as it relates to retaliation for making his arguments under the collective bargaining agreement, that is to say his grievance because he wasn't allowed to do his opt-out, he wasn't substituting and so on. But to the extent that the state law claim is premised on retaliation for his grieving under the collective bargaining agreement strikes me that that's preempt. Am I wrong? Yes. Why? Because the state law claim is that he was grieving his hours and he was grieving the safety issues. I'm distinguishing between grieving for violation of the collective bargaining agreement from objecting to based on safety. So stay with for the moment grieving for the hours that are worked and not paid in violation of the collective bargaining agreement. Why is that not preempted? The cases seem to indicate that the garment is not to be strictly applied in that situation, that retaliation claims for participating in the grievance procedure, yes, it's an unfair labor practice. And there's no question that firing somebody for filing a grievance is an unfair labor practice. And he could have brought it to the board. There's no question about that. I understand that. But I believe that if you're in federal court and the court does not throws out your fair labor act claim, then it has the right to keep jurisdiction over the state common law claim. Okay. Now, as to the argument that he's been retaliated against for making safety objections, what evidence is there that there was retaliation for the safety objections, as distinct from grieving under the collective bargaining agreement? Well, it's all part and parcel because the retaliation was for the fact he filed these grievances and won. The grievances encompassed. Did the grievances encompass safety? Yes, they did. Because he tried to complete this route in under nine and a half hours. He was unable to. You know, it said in here in the record, excerpt of record 57-1, facts 52, 53, and 54. These were undisputed facts that he had asked them to adjust this route. It had too many stops. It was racing through neighborhoods in the night trying to fit with, you know, trying to make it under nine and a half hours. That is a safety issue. What do you do now, assuming that the safety part is not preempted, and I think that's probably right under page, what do you do with So I'm now going to look at the merits as to whether or not he was retaliated against for making objections based on safety. What do you do with his deposition testimony where he's asked, Do you have anything other than the fact that you were fired after you won your grievance? Do you have any other evidence that this was retaliation? And he says no. Because he's a layman, Your Honor, and he doesn't know what they're asking for when they say, Do you have any other evidence? I think he was thinking, Do I have a document? Do I have a tape recording? I don't think he understands, but a lawyer would argue to the jury that there was plenty of evidence. Timothy Thompson was the person who orchestrated the whole interpretation of the 9-5 provision. He was the guy who lost the arbitration, the grievance that Cardenas brought. He was embarrassed. And lo and behold, it's Timothy Thompson who's sitting in judgment of whether Cardenas should be terminated. And he fired him. So but again, following up on Judge Fletcher's question, no evidence was put forward, right? Yes, we did. There may have been attorney error, but there was no evidence put forward. No, that's not correct at all, Your Honor. There was plenty of evidence. I mean, it's all in the record. It's in the summary judgment papers. It's in the deposition testimony. I talked about Timothy Thompson. I talked about how UPS could not identify, Your Honor, one individual who had ever been summarily terminated for incorrectly coding late errors. Is this the summary judgment stuff? Yes. It's all in the papers. Okay. Do you want to save any time? You've got just a little over two minutes. You can do whatever you want. I frankly am concerned because your question seemed to indicate that he was a cheat, that he cheated the company. He worked there for 17 years. What does that have to do with whether he cheated somebody? Well, it has a lot to do with why they treated him the way he did. He's a 17-year employee, had no prior record of discipline, and all he did, Your Honor, was had the gumption to file grievances and stand up for himself. Just so you understand, counsel, and I think you know, we're bound by the record. Your client may be the nicest guy in the world, but we look at the record, and the question here is if you get past the Gammon problem, then you get to summary judgment, and you have to prove your case. You say it's pretext. What was the evidence? I'm not seeing it. Where is it? You may want to answer that in rebuttal, but it's up to you. If you want to use up your time now, you can certainly do it. I'll answer in rebuttal. Okay, very good. Let's hear from UPS now, please. Good morning, Your Honors. May I please the Court? My name is George Abel, and I represent the Appellee United Parcel Service, or UPS. I want to start with the Garmin preemption issue. Under Garmin, whenever there are issues raised where conduct is arguably protected or prohibited by Sections 7 or 8 of the NLRA, the language of the case is to say that the states, as well as the federal courts, must defer the exclusion of the NLRB. And here what we have are grievances that were filed, and the grievances purportedly addressed overtime and safety. And I submit, Your Honors, that those words were a little bit loosely used and undefined. If we look at the grievances themselves, I think they're the critical part of the record. There were 14 grievances in the record, and there's a section on each grievance that says, What happened? And each time the appellant's response to that question disclosed that he was seeking a remedy for a contractual violation, not a statutory violation, not a health and safety violation. But doesn't this really undercut your argument about Garmin? Because Garmin talks about federal-state issues and whether the state law is trampling on federal law. What you're talking about here deals with federal law, one federal law versus another federal law, right? With respect to the retaliation of the FLSA, that's correct. Right. The second cause of action is a pure state law cause of action for public policy discharge. And I think that would be preempted. And, again, it's couched with two ideas in mind. One is an overtime violation, and one is a safety violation. I submit that it's not an overtime violation at all. It's not anything about the FLSA. Wasn't that really part of the collective bargaining agreement issue? I mean, isn't that the context in which it arises in this case? That is the context in which it arises. And is that a federal issue under 301? And that's why we argue that it should be preempted, Your Honor, because it's a claim that he was retaliated against for raising a contractual issue. He didn't say he didn't go to his boss and say, for example, I worked more than 40 hours this past week, you owe me overtime under the FLSA. Right. Again, help me. The Labor Management Act, as I understand it, is federal law, obviously, and you've got a collective bargaining agreement. You've got a dispute. That's federal law, right? Correct.  So he's got a dispute under that. MSLA, of course, is federal law. But Garmin is not designed to preempt one part of federal law with another part of federal law, is it? I believe Garmin, the language in Garmin, says that both the states and the federal courts have to defer to the NLRB when it's conduct that arguably falls within the NLRA. You didn't quite answer the question. The question was, does the NLRA preempt both federal and state law? My answer to that is the way I read the case is yes, it does. Okay. And we know that it does not preempt at least some aspects of the LMRA. And the question is whether it preempts the FLSA. And your argument is that it preempts any cause of action under the Fair Labor Standards Act, even assuming that this is brought under the Fair Labor Standards Act. That's correct. That is the argument that we're making. And I would also say that I don't believe that a true Fair Labor Standards Act claim has been made here. I understand that argument, too. Then I'll move then to the – Just as a matter of policy, I'm really confused by that argument. I don't understand the Supreme Court to agree with you at all on this. Isn't Garmin designed to rationalize the interaction between the federal and state law? If there's – I get it. Garmin says, hey, if there's a federal law that covers the field and you have a state law that is in the same field, then it's preempted arguably in most instances because you can't have two regimes dealing with the same issue where Congress is intended to, in effect, occupy the field. I don't know of any case law that says that you have one federal law and another federal law that one preempts. Now, you've got to work with them and see how they interplay, but I don't know about any preemption issues. Where's your federal case law that says that Garmin applies a preemption of one federal law as opposed to another? I believe the case law says that – Which case? Well, I think it's the Garmin case itself, which says that – And what were the facts of Garmin that would bring out your point here? The facts are where conduct is alleged that allegedly violates the NLRA, then it's the NLRB that has the exclusive jurisdiction to resolve that. And if we allow federal courts or state courts to get into that mix, then that undermines the uniform approach that Congress wanted in connection with labor law violations. And so I think it's Garmin itself that says it doesn't make a distinction between whether it's a federal law or a state law claim. The issue is the conduct. It's the conduct at issue that's relevant. And is the conduct arguably prohibited or protected by the NLRA? If it is, then we want the NLRB to be the sole arbiter of that. We don't want the federal courts getting involved. We don't want the state courts getting involved. That's a jurisdictional issue, isn't it? Not preemption. In other words, you're saying the NLRB has jurisdiction, not the federal court. I get that, but that's not preemption. Well, but if a claim is brought in the courts, then it is preempt. I believe the cases say that it's preempted because it's the NLRB that has the exclusive right to make that determination. It's not the state court. Maybe we understand jurisdiction and preemption differently. But I don't see where Garmin helps you. Personally, I don't. You have other things that help you, but I don't see how Garmin helps you. You want to proceed with the things that you think will help you, at least from my perspective? I would like to do that, Your Honor. Okay. And I would like to address. I'd like you to do so. Thank you. I would like to address, I think, the best evidence in the record of what happened at the time of the company's investigation. The investigator in this case, Stevenson, reviews a report that discloses that he, Mr. Cardenas, had used the code, customer requested late, 18 times over the course of two days. It was 13 one day and five another. He's questioned about that because that's a code that's rarely used because customers rarely request that their packages be delivered late. And so because it happened so frequently, he's questioned about it. He did admit during the course of that interview that he did not have authority from the customers to deliver the mail. Let me ask you this. I'm looking at the reference at ER 87. It said on September 25th, Stevenson, I'm not sure how to pronounce it, interviewed the plaintiff who admitted that he had made the customer requested late entries despite the fact he had not been authorized to do so. Is there anything from his deposition or anything where the plaintiff himself admitted that, or was that just something attributed to him? Where he admitted that he did not have authorization to do that? Correct. Yes, I do believe that that is in his deposition as well. Where? Your opposing counsel disputes that, of course. Well, what I think the opposing counsel is saying is that at the time of the deposition, he said, well, I had been trained that it was okay to use it, or well. I don't want to use that. What I want to know is what did Mr. Cardenas say with respect to the accusation that he had falsely and dishonestly attributed to customers that the customer requested late? We're in the deposition of Mr. Cardenas. Did he expressly admit that? In his deposition, he was shown an affidavit that he prepared for the NLRB, and that affidavit appears in the record at tab 38-1. Okay, this is ER what? This is ER Volume 4. I'm sorry, Volume 5, ER 38, page 218. And there's an affidavit that he prepared that describes the meeting he had with Ms. Stevenson after being This is an affidavit to the NLRB? Correct. And it was admitted in his deposition, authenticated in his deposition. And he said that he was asked, he was told that he had recorded these as customer requested late, that the company had checked with the customers and none of the customers had said that they had requested it late. And he told Stevenson at the meeting, I said that I pressed the button because I spoke to the customer and explained that I was delayed at Disney for two hours on a work-related matter and that the customer did not have a problem with my lateness. So what he's saying is I didn't obtain authorization ahead of time to deliver these packages late, which is what is required to use that code. Okay, so maybe it's about the customer, but the reality is he didn't expressly say, yeah, I cheated. He just said, I checked with the customer, and that's the problem is that they checked with the customer and the customer said, no, he never checked with me. So there's the problem rather than an admission, direct admission that he had cheated. Well, he admitted in his deposition, I used the code without authorization from the customer. That's an admission that he was cheating. But I want to make sure to pin this one down. As I understand it, the company's investigation revealed that none of the customers had requested late delivery. But I don't understand the company's investigation to have revealed that he never spoke to them and got what he got, which was to say from the customer saying, that's okay. Well, that's what he admitted in the affidavit he read. So what I'm trying to say is I don't see in the record any indication that when confronted with the problem, Mr. Martinez lied as to what he did. Now, it was an improper entry. It was not truthful as an entry. But I see nothing in the record to say that when confronted about it, he lied as to his interactions with the customers. Is that correct? I don't think he lied at that point when confronted. The lying or the cheating, the dishonesty was using the code when he didn't have authorization. I understand that. But as I understand the record, there was no lying thereafter. As he was explaining what happened, you didn't catch him in a lie as he explained what happened. That's correct. He admitted using the wrong code. Yeah. Okay. So I think that is the key aspect of this record because it shows that at the time of the decision, he admitted that he had used a code that he didn't have the proper authorization to use. That's falsification of company records. Okay. Technically, that may be true. But let's move forward a little bit since you're running out of time here. Let's get to the summary judgment. The record seems to suggest that the plaintiff simply didn't bear his burden to put on evidence to show pretext or to show a violation. Is that your reading of what happened? Yes. The evidence is, well, I think the evidence shows two things. The evidence shows first that he had not established a pre-manufactured case for either an FLSA violation or retaliation or for a public policy retaliation. And I think that's shown by the fact that he did not raise a Fair Labor Standards Act claim or dispute, and he also did not raise a safety dispute. It's important, I think, to note in this complaint. Excuse me. When did he not raise a public safety dispute? You said he didn't raise a public safety question. He did at some point, so you must be having your statement must be sort of time limited. What I'm saying is he raised an hours problem. He raised an hours problem when? He raised an hours problem through the grievances and in talking to his supervisors. Right. And in the course of doing that through the grievances, did he also mention safety problems? He didn't mention safety in the grievances themselves. In the grievance hearings, the testimony is that he raised or he believed that working more than nine hours in a day was unsafe. So we do have safety allegations. We do have safety problems alleged during the grievance process. Well, I don't think there's a statutory tether that you can make that working more than nine hours in a day is unsafe. Whether it's safe or not, he alleges that it's unsafe at some points during the grievance process. Is that right? During the grievance hearings, correct. Okay, let me ask you this. With respect to state law claims for retaliation, is retaliation for having raised safety problems preempted? I'm thinking of Page. And I think under Page, I believe there's a distinction in this case from Page that, yes, I think it would be preempted. Because as I read Page, it says that if you raise safety problems and you're retaliated against as a result of raising safety problems, that retaliation claim is not preempted. So how do you get out from under Page? Have I misread the case? Because in Page, there was not a grievance filed. There was a true safety claim made and tied to a California statute, Labor Code 6310. And I think that makes a distinction between that case and our case. What do you mean a true safety claim? You might think that the safety claim is kind of bogus in the sense that it wasn't unsafe. But that's judging whether it's safe or not. So what do you mean when you say in Page there was a true safety claim that's distinct from this case? What I mean by that is in Page, there was a tether to a statute. In order to state a Tammany claim, a public policy claim, there has to be a public policy that's tethered to some statute or regulation. And here there isn't one. Now, I think you may then be saying that there's no plausible claim under square law for safety. Is that your argument? Or are you saying that it's simply preempted, even though it's a safety claim? I think both arguments apply, Your Honor. I may want to just check on one thing, follow up with Judge Fletcher. My reading of the summary judgment hearing, the plaintiff did not appear to offer any evidence of his complaints related to violations of state regulations. Is that correct? That's correct. Okay. And I also think that what it showed was the evidence in summary judgment solely demonstrated that he filed grievances for violations of the collective bargaining agreement's overtime provisions. Is that correct? The collective bargaining 9.5 provision, that's correct. Okay. Any other questions that my colleagues have? At this point, I'm finished. Thank you. Okay. Thank you very much. We'll hear rebuttal arguments. You've got one minute and 27 seconds. I'm going to have to speak fast. I just want to indicate one important thing. In Sanderson v. Rees v. Sanderson-Plumbing, Supreme Court case 120, Supreme Court 2097, the court indicated that a plaintiff must rely on circumstantial evidence and reasonable inferences in dealing with a retaliatory discharge claim. And in the Ninth Circuit, he indicated that an employer's true motive is rarely easy to discern. There's never going to be a smoking gun in a situation like this. In summary judgment, the court is to view the evidence in favor of the nonmoving party and make all reasonable inferences in favor. So basically, give me a break. I'm the plaintiff. I've got to come up with the idea. I don't have to burden, but you've got to give the plaintiff a little bit of a break here. Okay. I gather your position is that the evidence that you put on was sufficient to overcome the motion for summary judgment. Yes. The minimal threshold showing that I need. Yes, Your Honor. But here's the other point I want to make. Timothy Thompson helped negotiate the proven dishonesty clause in the collective bargaining agreement. I had the opportunity to depose him about what that means. And he said, I asked him, I said, my client was escorted out of the building, turned in his keys after serving 17 years. He was terminated for having found to be dishonest in that he recorded some packages incorrectly. And this was at record volume three at page four of the testimony. Now, I asked Timothy Thompson, was there any discussion about those kind of circumstances constituting dishonesty under this section? In his answer. Forgive me, counsel. You're out of time, but you're not talking about the issues that would defeat summary judgment, are you? Yes, because they're relying on proven dishonesty as the reason for his termination. Okay. So it's a pretext argument. Pretext, yeah. All right. Thank you very much. We have your arguments. Thank you both. The case just argued is submitted. Thank you.
judges: Fletcher, Smith, Watford